WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert E. LISS and Zoe LISS, | No. CIV-04-2001-PHX-SMM |
| Plaintiffs, | ORDER |
| v. | |
| EXEL TRANSPORTATION SERVICES, INC. et al., | |
| Defendants. | |
| EXEL TRANSPORTATION SERVICES, INC., | |
| Counterclaimant, | |
| v. | |
| Robert E. LISS and Zoe LISS, | |
| Counterdefendants. | |

Before the Court are Plaintiffs/Counter-Defendants Robert and Zoe Liss' Motion to Strike Edward McDonough's Report Dated July 14, 2006 (Dkt. 177) and Motion for Partial Summary Judgment Re: Breach of Contract by Exel Transportation Services, Inc. (Dkt. 98)

### I. BACKGROUND

**A. Factual History**

The following facts are undisputed. Plaintiff/Counterdefendant Robert Liss ("Liss") worked for Defendant/Counterclaimant Exel Transportation Services, Inc. ("Exel"), and its predecessor companies from December 28, 1992 to May 6, 2004. On July 1, 1994, Liss entered

into an Employment and Non-Compete Agreement (the "Employment Agreement") with Jupiter Transportation, a wholly-owned subsidiary of Mark VII Transportation Company, which is now known as Exel. In a December 23, 1998 addendum to the Employment Agreement, Jupiter Transportation assigned the agreement to Taurus Trucking, another wholly-owned subsidiary of Mark VII Transportation Company, now Exel. In the addendum, the parties confirmed the provisions of the Employment Agreement would continue with the assignment from Jupiter to Taurus. Part 3 of the Employment Agreement, labeled "Compensation," provides in relevant part:

> 3.02 **Bonus** In addition to the Base Salary, in each fiscal year (commencing with the fiscal year ending December 31, 1994), Employer will provide a bonus to Executive payable within 90 days following the close of Employer's fiscal year.

On February 18, 2004, Liss was deposed in an arbitration proceeding relating to the calculation of his 2002 bonus. During the deposition, Exel and Liss negotiated a Tolling Agreement, which became effective on February 18, 2004. The Tolling Agreement provides in relevant part:

> Liss and [Exel] hereby agree that the time period between February 18, 2004, and the date the Tolling Agreement is terminated [June 1, 2004] will not be included in computing the time limited by any statute of limitations, laches, estoppel, waiver, or other similar defense concerning timeliness of commencing an arbitration or civil action applicable to any claim brought by Liss against [Exel] in connection with breach of employment contract or breach of A.R.S. § 23-355, or any claim brought by [Exel] against Liss.

Liss terminated the Employment Agreement on May 6, 2004, citing § 5.01(g) as grounds for his termination of the agreement. Section 5.01(g) provides for the termination of the Employment Agreement "[a]t Executive's option, on the date Employer commits any act that is a material breach of this Agreement." At the time of his departure, Liss was a President of Special Services Group ("SSG"), a division of Exel.

The Employment Agreement contained certain restrictive covenants that were activated upon termination, including a "Confidentiality" agreement (§ 4.01); a "Covenant Against

- 2 -

Competition" (§ 4.02); an agreement regarding "Employment of Other Employees by Executive" (§4.03); and a "Judicial Amendment" provision (§ 4.04).

After Liss's departure, Steve Bowers ("Bowers"), Vice President of Operations at Exel, assumed responsibility for the company-managed operations previously managed by Liss. In addition, the agencies that were previously managed by Liss through the Special Services Group were reported as part of Exel's agency network.

To date, Liss has not received a bonus for 2003.

**B. Procedural History**

On August 2, 2004, Plaintiffs Robert E. Liss and Zoe Liss[1] filed a Complaint in Maricopa County Superior Court against Defendants. The Complaint alleged two counts under Arizona state law: breach of contract and unpaid wages and treble damages under Arizona Revised Statutes § 23-355. Specifically, Liss claims that Exel breached the 1994 agreement, as amended by addenda, by failing to pay Liss bonus compensation, and Liss is therefore entitled to treble damages due to Exel's bad faith breach. Exel removed the action to this Court on September 23, 2004.

Exel answered the Complaint and filed a Counterclaim against Liss on October 6, 2004, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, misappropriation of Exel's trade secrets in violation of Arizona state law, breach of fiduciary duty, tortious interference with prospective business relationships, and accounting. Both parties have since amended their pleadings by adding additional claims. Liss filed an Amended Complaint containing additional claims for tortious interference with business expectancy and declaratory relief. Exel filed an Amended Counterclaim containing an additional claim for defamation.

On May 23, 2006, Liss filed the Motion for Partial Summary Judgment Re: Breach of Contract by Exel Transportation Services, Inc. Exel responded on September 20, 2006, and Liss

---

[1] As in a prior Order, and because Zoe Liss is named solely due to Arizona community property law and did not participate in actions upon which the lawsuit is based, the Court will refer to Plaintiffs collectively as "Liss."

- 3 -

1  replied on October 20, 2006. Liss accompanied his reply with a Motion to Strike the Expert
2  Report of Edward M. McDonough.
3        The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as Liss is
4  a citizen of Arizona, Exel is a Delaware corporation with its principal place of business in
5  Tennessee, and the amount in controversy exceeds $75,000.

## II. MOTION TO STRIKE

7        On October 20, 2006, Liss filed a Motion to Strike the Expert Report of Edward M.
8  McDonough (the "McDonough Report").

**A. Standard of Review**

10        Evidence a party relies upon with respect to a summary judgment motion must have an
11  appropriate foundation and must be supported or opposed by admissible evidence. FED. R. CIV.
12  P. 56(e); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).
13  Inadmissible evidence is subject to a timely objection and may be stricken from the record.
14  *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991). Admissibility of evidence
15  is governed by the Federal Rules of Evidence.

**B. Discussion of Motion to Strike**

17        Liss moves for an order striking the Expert Report of Edward M. McDonough (the
18  "McDonough Report") dated July 14, 2006, which is attached as Exhibit 5 to Exel's Statement
19  of Facts in Support of Opposition to Robert Liss's Motion for Partial Summary Judgment. (Dkt.
20  164). Liss challenges the admissibility of the McDonough Report by arguing it is inadmissible
21  under Rule 56 of the Federal Rules of Civil Procedure and rules 104(a), 403 and 702 of the
22  Federal Rules of Evidence. The Court disagrees.
23        Rule 56(c) allows a party opposing a motion for summary judgment to show, by affidavit
24  or otherwise, that a genuine issue of material fact exists for the factfinder to resolve. Fed. R.
25  Civ. P. Affidavits used to oppose a summary judgment "shall be made on personal knowledge,
26  shall set forth such facts as would be admissible in evidence, and shall show affirmatively that
27  the affiant is competent to testify to matters stated therein." Fed. R. Civ. P. 56(e). The Ninth
28  Circuit has previously stated that an expert opinion may be used to oppose to a motion for

- 4 -

summary judgment "if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." *Bulthius v. Rexall Corp.*, 780 F.2d 1315, 1318 (9th Cir. 1985).

Here, the Court finds that Exel has established the foundation necessary for allowing McDonough's Report to be considered in ruling on the motion for partial summary judgment. While Exel did not originally include an affidavit of McDonough with their response, they subsequently filed (under seal) a Notice of Errata substituting an Affidavit of Expert Witness Edward McDonough ("McDonough Affidavit") for the McDonough Report attached as Exhibit 5 to their September 15, 2006 Opposition to Liss's Motion for Partial Summary Judgment. (Dkt. 185).

The McDonough Affidavit (as well as the McDonough Report) demonstrates that McDonough is competent to conduct financial analyses and his testimony is admissible to assist the trier of fact in determining damages. *See e.g. Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938 (9th Cir. 1999) (considering several possible theories for determining damages that were presented through expert testimony by both sides). As McDonough's resume illustrates, he has a significant body of published work, he has previously testified in numerous cases in Arizona and Nevada, and he is currently a senior managing director at FTI Forensic and Litigation Services. In addition, McDonough's affidavit expressly states the factual basis of his opinion and he provides a detailed list of all the information he relied upon in Exhibit A of his report. McDonough's testimony does not, as Liss argues, consist of contract interpretation and mere arithmetic. Rather, it is properly submitted expert testimony offered to support Exel's response to the motion for partial summary judgment. Accordingly, the Court will deny Liss's Motion to Strike.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Liss has filed a Motion for Partial Summary Judgment Re: Breach of Contract by Exel Transportation Services, Inc. (Dkt. 98). Liss seeks summary judgment on a number of discrete

issues, including: (1) Exel's breach of the Employment Agreement; (2) Exel's violation of A.R.S. §§ 23-352 and 23-353; (3) Liss's entitlement to post termination compensation under sections 6.03 and 6.04 of the Employment Agreement; (4) a determination that the restrictive covenants contained in the Employment Agreement are unenforceable as a matter of law; (5) dismissal of Count One of Exel's Counterclaim; and (6) dismissal of all counterclaims that seek damages based on lost profits and irreparable harm.  The Court will consider each of these issues in turn.

**A. Standard of Review**

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b).  A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 317.  The party opposing summary judgment "may not rest upon the mere allegations or

- 6 -

1  denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a
2  genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co. v.Zenith Radio*,
3  475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.
4  1995).

5  **B**. **Exel's Breach of the Employment Agreement**

6      Liss argues that he is entitled to summary judgment on the issue of employer breach of
7  the employee contract. (Dkt. 98 at 10)  According to Liss, the express terms of the Employment
8  Agreement required Exel to pay him his 2003 bonus by April 1, 2004.  Liss acknowledges that
9  the parties disputed the precise amount of the bonus he was due, but argues that "[n]o contract
10 modification occurred to change the due date of Liss's annual bonus" and thus  Exel was
11 required to pay the undisputed sum by April 1, 2004 pursuant to the Employment Agreement.
12 (Dkt. 98 at 10).  As a result of this breach, Liss argues Exel violated A.R.S. §§ 23-352 and 23-
13 353 by withholding his wages and that he is entitled to treble damages under A.R.S. § 23-355.
14 In addition, Liss argues that Exel's failure to pay him the undisputed bonus amount by April 1,
15 2004, entitles him to post termination compensation under sections 6.03 and 6.04 of the
16 Employment Agreement.

17     Exel contends *inter alia* that the parties modified the terms Employment Agreement,
18 specifically, § 3.02, when they entered into a Tolling Agreement effective February 18, 2004.
19 (Dkt. 163 at 19-20)  According to Exel, the Tolling Agreement extended any claims Liss may
20 have had against them, including claims for breach of the Employment Agreement or breach
21 of A.R.S. § 23-355, until June 1, 2004.  Thus, the Employment Agreement was not breached,
22 Exel argues, prior to Liss's resignation on May 6, 2004, because the parties had expressly agreed
23 to work together to resolve all bonus-related issues.  In support of this interpretation, Exel
24 submitted a copy of the Tolling Agreement (*Id*., Ex 15); a portion of the transcript from the
25 February 18, 2004 Deposition of Bob Liss (*Id.*, Ex. 14); a memorandum from Bob Liss to Mike
26 Musacchio dated February 19, 2004 (*Id*., Ex. 16); and, Bob Liss's February 4, 2004 Declaration
27 (*Id*., Ex. 18).  Liss argues that the Tolling Agreement suspended only the statute of limitations
28 and had no effect on Exel's obligations under the Employment Agreement. (Dkt. 178 at 9)

- 7 -

"The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." *Shattuck v. Precisions Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332 (1977). Where, however, the contractual language used is susceptible to differing, reasonable interpretations and where there may be relevant extrinsic evidence of the parties actual intent, the meaning of the words becomes an issue of fact and summary judgment is inappropriate. *See Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984); *see also Laborers Health & Welfare Trust Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir. 1983); *see also Arizona Laborers v. Conquer Cartage Co.*, 753 F.2d 1512, 1515 (9th Cir. 1985). "A determination of the surrounding facts, consideration of which is necessary to resolve ambiguities, is for the trier of fact." *Associated Students of University of Ariz. v. Arizona Bd. of Regents*, 120 Ariz. 100, 105, 584 P.2d, 564, 569 (Ariz. Ct. App. 1978). Finally, "parties to an unperformed contract may, by mutual consent, modify it." *Nationwide Resources Corp. v. Massabni*, 134 Ariz. 557, 563, 658 P.2d 210, 216 (App. 1982); *see also Restatement (Second) of Contracts* § 89 (1981).

The Court finds that Exel has raised a genuine issue of material fact as to whether the Tolling Agreement modified the terms of the Employment Agreement. Pursuant to § 3.02 of the Employment Agreement, Exel was required to provide a bonus to Liss within 90 days following the close of the fiscal year (December 31st). However, on February 18, 2004, the parties negotiated a Tolling Agreement, the general terms of which were outlined by the parties during the deposition of Bob Liss and later memorialized in a written agreement that was signed by both parties.

The Court finds that summary judgment is inappropriate because the Tolling Agreement is susceptible to differing interpretations as to whether it contemplates modifying the time limits imposed by the Employment Agreement. Exel claims that the intent of the Tolling Agreement was to provide the parties additional time to negotiate a settlement for all of the claims between Liss and Exel, including the bonus claims. Thus, Exel believed that the Tolling Agreement modified Employment Agreement such that any claims for breach of employment contract or breach of A.R.S. § 23-355 were suspended while the parties negotiated a settlement. Exel

supports this interpretation with sufficient evidence, such as the transcript of the February 18, 2004, Deposition of Bob Liss. The transcript contains the following statements, which were made in reference to the Tolling Agreement: "there will be an agreement to toll claims, if any, against Exel or ETS by Liss and as to Exel, ETS, as against Mr Liss from today through June 1$^{st,}$ 2004"; "the parties mutually intend to arrive at a mutual release and settlement, which will likely, if successful, be incorporated into a new employment agreement for Mr. Liss"; and, "what we're essentially agreeing to is that we'll make efforts to negotiate a mutual release and a settlement, and that may include a number of possible options." (Dkt. 164, Ex. 14). Therefore, the bonus provisions of the Employment Agreement were not breached, according to Exel, because the time limit imposed by § 3.02 had been suspended so the parties could negotiate a settlement.

On the other hand, the language of the Tolling Agreement provides sufficient evidence to support Liss's interpretation- the Tolling Agreement did not suspend the due date for the bonus payment. The Tolling Agreement, effective on February 18, 2004, provides:

> Liss and [Exel] hereby agree that the time period between February 18, 2004, and the date the Tolling Agreement is terminated [June 1, 2004] will not be included in computing the time limited by any statute of limitations, laches, estoppel, waiver, or other similar defense concerning timeliness of commencing an arbitration or civil action applicable to any claim brought by Liss against [Exel] in connection with breach of employment contract or breach of A.R.S. § 23-355, or any claim brought by [Exel] against Liss.

Dkt. 163, Ex. 15. While the parties refer to "any claim brought by Liss....in connection with breach of employment contract or breach of A.R.S. § 23-355," they make no specific reference to modifying the due date for payment of the bonus due under § 3.02 of the Employment Agreement. Liss does not construe "other similar defense concerning timeliness" to include a defense based on ripeness grounds.[2] Rather, Liss viewed the agreement as suspending only time limits that could be used to bar claims.

---

[2] While Exel did not specifically mention "ripeness" in their brief, the Court finds that their argument is premised on ripeness principles. Exel is essentially arguing that Liss prematurely claimed breach of the Employment Agreement when he resigned on May 6, 2004.

- 9 -

Because a material question - whether the Tolling Agreement modified the Employment Agreement such that the time limit imposed by § 3.02 was suspended while the parties negotiated a settlement – remains in dispute, summary judgment is improper here on the issues related to Exel's alleged breach of the Employment Agreement. Accordingly, the Court will deny Liss's motion for partial summary judgment as to the issues of breach of the Employment Agreement, withholding of wages in violation of A.R.S. § 23-355 and failure to pay post termination compensation under sections 6.03 and 6.04.

**C. Enforceability of the Restrictive Covenants**

Liss seeks summary judgment on the restrictive covenants contained in the Employment Agreement, sections 4.01, 4.02, and 4.03, arguing that they are unreasonable and, therefore, unenforceable.[3] According to Liss, Exel immediately replaced him with two competent employees from within the company, Steve Bowers ("Bowers") and Dan Egan ("Egan"). In light of the experience of Egan and Bowers, Liss contends that the three year restrictive period provided for in section 4.02 was unreasonable. Liss further claims that the confidential information and restrictive covenant provisions (§§ 4.01 and 4.03 respectively) of the Employment Agreement are not severable; therefore, under the "blue pencil rule" articulated by the Arizona Supreme Court in *Olliver/Pilcher Ins. Inc. v. Daniels*, 148 Ariz. 530, 715 P.2d 1218 (1986), all of the restrictions must be deemed unenforceable.

Defendant responds by pointing out that the Court has previously rejected Liss's claim that the covenant not to compete is unenforceable as a matter of law. According to Exel, "for this reason alone the Court should once again conclude that [Liss's] non-compete covenant is not invalid as a matter of law." [4] (Dkt. 163 at 30). Exel further contends that the restrictive

---

[3] Liss also argues that the restrictive covenants are unenforceable by virtue of Exel's breach of the Employment Agreement. Because the Court has already determined that whether Exel breached the Employment Agreement involves a genuine dispute of material fact that precludes summary judgment, the Court will not address this argument.

[4] Ironically, in their Motion for Partial Summary judgment on Count II of Robert Liss's Amended Complaint (Dkt. 180), counsel for Exel raise an argument regarding Mr. Liss's waiver of treble damages that was previously rejected by the Court in the December 12, 2005 Order on Exel's Motion for Partial

1 covenants "are reasonable in geographical and temporal scope and are necessary to protect
2 Exel's economic well-being and goodwill." (*Id*.)

3 As a preliminary matter, the Court rejects Defendant's contention that Plaintiff is
4 precluded from raising an argument in a motion for summary judgment that was previously
5 rejected in a motion to dismiss. The legal standards and procedural requirements governing
6 motions for summary judgment differ from those governing motions to dismiss. *Compare e.g.*
7 *Celotex*, 477 U.S. 317 *with e.g Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th
8 Cir. 1995). An argument that fails in a motion to dismiss may nonetheless be a winning
9 argument in a motion for summary judgment where the court is able to look beyond the
10 pleadings.

11 **i. Reasonableness**

12 Determining whether a restrictive covenant is reasonable is a question of law; however,
13 reasonableness is a fact intensive inquiry that depends on weighing the totality of circumstances.
14 *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366-367, 982 P.2d 1277,1280-1281 (Ariz.
15 1999). A covenant not to compete is generally enforceable as long as it is no broader than
16 necessary to protect an employer's legitimate business interests. *See generally Restatement*
17 *(Second) of Contracts*, §188 (1981). "A restriction is unreasonable and thus will not be
18 enforced: (1) if the restraint is greater than necessary to protect the employer's legitimate
19 interest; or (2) if that interest is outweighed by the hardship to the employee and the likely
20 injury to the public." *Valley Med. Specialists*, 194 Ariz. at 369, 982 P.2d at 1283.

21 The Court finds that the scope of section 4.02 of the Employment Agreement is
22 unreasonable as a matter of law. A covenant's scope is defined by its duration and geographic
23 area. *Valley Med. Specialists*, 194 Ariz. at 370, 982 P.2d at 1285. Section 4.02 has a three year
24 durational requirement, which is unjustifiably long based on the evidence. Exel's legitimate,
25 protectable interests include: (1) their desire to retain their customer base; (2) their confidential
26 agent and vendor lists; and, (3) their goodwill with customers, agents and vendors. Despite

27 ───────────────

28 Judgment on the Pleadings (Dkt. 68).

- 11 -

these legitimate interests, the Court finds that the duration of section 4.02 is greater than necessary to achieve its purpose. Liss resigned on May 6, 2004. Shortly after Liss's departure, Bowers, then-Vice President of Operations at Exel, assumed responsibility for the company-managed operations previously managed by Liss. In addition, the agencies that were previously managed by Liss through SSG were reported as part of Exel's agency network. Neither Bowers, an experienced executive, nor the agency management that assumed Liss's previous responsibilities, required any special training or education to assume his position. Therefore, while Exel was justified in imposing some sort of durational requirement in the covenant against competition, three years was unreasonably long based upon these facts. "When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness." *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 518, 724 P.2d 596, 604 (App. 1986) (quoting Blake, *Employment Agreements Not to Compete*, 73 Harvard L. Rev. 625, 677 (1960).

Moreover, section 4.02 is unreasonably broad in terms of its geographic area and places an unreasonable hardship upon Liss. Section 4.02 restricted Liss from directly or indirectly engaging in any work associated with motor freight transportation services for three years, regardless of where this business is located. Essentially banishing Liss from the motor freight transportation service industry- his specific area of business expertise-- for three years was unjustified and unreasonably harsh. Accordingly, the Court finds § 4.02 unreasonable as a matter of law.

### **ii. The Blue-Pencil Rule**

Liss does not directly challenge the reasonableness of sections 4.01 and 4.03 of the Employment Agreement; instead he relies on a flawed application of the blue pencil rule to argue that they are unenforceable. According to Liss, if the non-competition covenant (Section 4.02) is unenforceable, then the confidentiality provisions are also unenforceable since they are not susceptible to severance under the blue pencil rule.

Under the blue pencil rule, if the contract is clearly intended to be severable, the Court can enforce the lawful part and ignore the unlawful part by cutting grammatically severable, unreasonable provisions. *Olliver/Pilcher Ins. Inc.*, 148 Ariz. at 533, 715 P.2d 1221. However, even though courts may prune contracts under the blue pencil rule, they will not rewrite them for the parties. *Id.*

While the Employment Agreement expressly provides for severability in Section 4.04, the blue pencil rule is of no avail to Defendant here. In order to make Section 4.02 reasonable, the Court would have to rewrite the agreement by rewriting the durational requirement and adding a geographic limitation. Therefore, the blue pencil rule will not salvage Section 4.02 and the entire section is unenforceable.

Although Section 4.02 is unenforceable, this finding has no impact on the other covenants contained in Part 4 of the Employment Agreement. Liss has not demonstrated that sections 4.01 and 4.03 are unreasonable by themselves. Thus, applying the blue pencil rule to the Employment Agreement, the Court will simply delete Section 4.02 and allow the other covenants of Part 4 to stand.

Accordingly, the Court finds that only Section 4.02 of the Employment Agreement is unenforceable.

**D. Count One of Exel's Counterclaim**

Liss urges the Court to dismiss Count One of Exel's Counterclaim relating to damages for inevitable disclosure of trade secrets, confidential information or competition. According to Liss, the inevitable disclosure doctrine is not the law of the Ninth Circuit and relates only to the grant of injunctive relief. Because Exel has not calculated any damages resulting from Liss's alleged disclosure of trade secrets, confidential information or competition, Liss argues that the claim should be dismissed. Exel did not directly respond to Liss's argument regarding the inevitable disclosure doctrine; however, Exel claims that Liss breached the Employment Agreement by violating the confidentiality provision, Section 4.01, and claims to have suffered $679,250 in damages as a result of Liss's misappropriation of trade secrets and other proprietary information. (Dkt. 163 at 18).

1  The inevitable disclosure doctrine is most often limited to situations where an employer
2  seeks to obtain injunctive relief when an employee leaves to work for a competitor. *See, e.g.,*
3  *PepsiCo v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (affirming trial court's order
4  prohibiting defendant employee from working for a competing beverage company for six
5  months and permanently enjoining him from disclosing confidential information); *FMC Corp.*
6  *v. Varco Int'l, Inc.*, 677 F.2d 500 (5th Cir. 1982) (granting injunction that allowed defendant
7  employee to work for new employer but prohibited new employer from placing employee in a
8  "position that would create an inherent threat of disclosure").   It is unclear whether Arizona
9  recognizes the theory of inevitable disclosure as the Court did not locate a single case in
10 Arizona applying this theory.

11  Regardless of Arizona's view of the inevitable disclosure doctrine, the Court will not
12 dismiss Count One of Exel's Counterclaim because it is not based on that doctrine. Count One
13 of the Counterclaim is a claim for breach of contract and Exel requested both injunctive and
14 monetary relief. Exel states that "Liss materially breached and continues to materially breach
15 the Agreement by... using and disclosing confidential information." (Dkt. 122, ¶ 60). It is
16 undisputed that Liss entered into a valid Employment Agreement with Exel that contained
17 covenants regarding competition and confidentiality. Moreover, unlike the competition
18 covenant, the Court has not deemed the confidentiality provision (§ 4.01) unenforceable as a
19 matter of law. Exel claims that Liss took a confidentiality and propriety agent and vendor list
20 from them and attempted to solicit these agents for his Crossdockers network. (Dkt. 194, ¶ 93).
21 Further, Exel claims to have suffered $679,250 in damages as a result of Liss's misappropriation
22 of trade secrets and has provided evidence to support this calculation. (Dkt. 164, Ex. 5).
23 Therefore, the Court finds that Exel has stated a valid claim for breach of contract and Count
24 One of Exel's Counterclaim will not be dismissed.

25 **E. Counts for Which Exel Seeks Monetary Damages Based on Irreparable Harm**

26  Liss requests the Court to dismiss all counterclaims that seek damages based on lost
27 profits and irreparable harm, including Exel's claims for breach of contract and disclosure of
28 trade secrets. According to Liss, Exel has not provided any statement of damages. (Dkt. 98 at

20).  In addition, Liss argues that any claims of irreparable harm based on loss of good will or lost profits should be dismissed in light of Jim Damman's statements that Exel has increased its financial performance.

The Court will not dismiss all counterclaims based on lost profits and irreparable harm because Exel has provided evidence of damages. (Dkt. 164, Ex. 5).  The McDonough Affidavit contains material evidence concerning Exel's damages based on their counterclaims. (*Id*.)   In the Ninth Circuit, an expert opinion may be used to oppose to a motion for summary judgment "if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." *Bulthius*, 780 F.2d at 1318.  As discussed *supra* in the Court's analysis of Liss's Motion to Strike, McDonough is deemed to be competent to give an expert opinion and the factual basis for the opinion is provided in his affidavit.  Because Exel has supported their counterclaims with evidence of damages, the Court finds that summary judgment on this disputed issue is improper.

## IV. CONCLUSION

Accordingly, in light of the reasons set forth above,

**IT IS HEREBY ORDERED DENYING** Liss's Motion to Strike Edward McDonough's Report Dated July 14, 2006 (Dkt. 177).

**IT IS FURTHER ORDERED GRANTING** Liss's Motion for Partial Summary Judgment as to § 4.02 of the Employment Agreement.  The Court finds § 4.02 of the Employment Agreement to be unreasonable and therefore unenforceable as a matter of law.

**IT IS FURTHER ORDERED DENYING** the remainder of the claims raised in Liss's Motion for Partial Summary Judgment Re: Breach of Contract by Exel Transportation Services, Inc. (Dkt. 98).

DATED this 20th day of March, 2007.

_____
Stephen M. McNamee
United States District Judge