WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert E. LISS and Zoe LISS,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>EXEL TRANSPORTATION SERVICES,<br>INC. et al.,<br><br>　　　　Defendants.<br>_____<br>EXEL TRANSPORTATION SERVICES,<br>INC.,<br>　　　　Counterclaimant,<br><br>v.<br><br>Robert E. LISS and Zoe LISS,<br><br>　　　　Counterdefendants.<br>_____ | No. CIV-04-2001-PHX-SMM<br><br>ORDER |

　　　　Pending before the Court are Defendant/Counterclaimant Exel Transportation Services, Inc.'s ("Exel") Motion for Partial Summary Judgment on Count II of Robert Liss's Amended Complaint (Dkt. 180) and Motion for Partial Summary Judgment on Mr. Liss's Claims for 2001 and 2002 Bonus Compensation (Dkt. 188).

## I. BACKGROUND

**A. Factual History**

　　　　The following facts are undisputed. Plaintiff/Counterdefendant Robert Liss ("Liss") worked for Defendant/Counterclaimant Exel Transportation Services, Inc. ("Exel"), and its

predecessor companies from December 28, 1992 to May 6, 2004. Liss is an experienced executive with a Master's Degree in Business Administration.

On July 1, 1994, Liss entered into an Employment and Non-Compete Agreement (the "Employment Agreement") with Jupiter Transportation, a wholly-owned subsidiary of Mark VII Transportation Company, which is now known as Exel. The final Employment Agreement was the product of protracted negotiations, which lasted 18 months. Although Liss was aware that he could retain counsel to assist in the negotiations, he opted to represent himself and was able to negotiate a buyout provision more substantial than that of the company's CEO and Chairman at the time. Liss also changed the choice of law provision from Missouri to Arizona. In a December 23, 1998, addendum to the Employment Agreement, Jupiter Transportation assigned the agreement to Taurus Trucking, another wholly-owned subsidiary of Mark VII Transportation Company, now Exel. In the addendum, the parties confirmed the provisions of the Employment Agreement would continue with the assignment from Jupiter to Taurus.

Liss terminated the Employment Agreement on May 6, 2004, citing § 5.01(g) as grounds for his termination of the agreement. Section 5.01(g) provides for the termination of the Employment Agreement "[a]t Executive's option, on the date Employer commits any act that is a material breach of this Agreement." At the time of his departure, Liss was a President of Special Services Group ("SSG"), a division of Exel.

The Employment Agreement contains a liquidated damages provision in Section 6.03, which provides:

> Upon termination of this Agreement pursuant to Section 5.01(g) (Employer's breach), Employer [Exel] shall pay to Executive [Liss] all of the compensation set forth in Section 3, including bonus pursuant to Section 3.02, for twelve months subsequent to the breach. All post-employment compensation paid by Employer under the terms of this Section 6 shall be calculated in the manner set forth in Section 3 hereof and shall constitute liquidated damages which Executive hereby agrees to accept as his exclusive remedy for any breach of the obligations of the Employer hereunder hereby waiving any right to punitive or exemplary damages.

(Ex. A to Amend. Compl., Ex. B. to Amend. Countercl.)

Relying on Section 6.03, Exel contends that Count II of Liss's Amended Complaint, which asserts a statutory claim for unpaid wages and treble damages, should be dismissed because the Employment Agreement precludes such a claim.

- 2 -

**B. Procedural History**

On August 2, 2004, Plaintiffs Robert E. Liss and Zoe Liss[1] filed a Complaint in Maricopa County Superior Court against Defendants. The Complaint alleged two counts under Arizona state law: (1) breach of contract, and (2) unpaid wages and treble damages under Arizona Revised Statutes § 23-355. Specifically, Liss claims that Exel breached the 1994 agreement, as amended by addenda, by failing to pay Liss bonus compensation, and Liss is therefore entitled to treble damages due to Exel's bad faith breach. Exel removed the action to this Court on September 23, 2004.

Exel answered the Complaint and filed a Counterclaim against Liss on October 6, 2004, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, misappropriation of Exel's trade secrets in violation of Arizona state law, breach of fiduciary duty, tortious interference with prospective business relationships, and accounting. Both parties have since amended their pleadings by adding additional claims. Liss filed an Amended Complaint containing additional claims for tortious interference with business expectancy and declaratory relief. Exel filed an Amended Counterclaim containing an additional claim for defamation.

On November 2, 2006, Exel filed a Motion for Partial Summary Judgment on Count II of Robert Liss's Amended Complaint. Liss responded on December 5, 2006, and Exel replied on January 12, 2007. Accordingly, the matter is now fully briefed.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as Liss is a citizen of Arizona, Exel is a Delaware corporation with its principal place of business in Tennessee, and the amount in controversy exceeds $75,000.

## II. STANDARD OF REVIEW

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof."

---

[1] As in a prior Order, and because Zoe Liss is named solely due to Arizona community property law and did not participate in actions upon which the lawsuit is based, the Court will refer to Plaintiffs collectively as "Liss."

- 3 -

FED. R. CIV. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 317. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

### III. DISCUSSION

**A. Count II of Liss's Amended Complaint**

Exel moves for summary judgment on Count II of Liss's Amended Complaint. Exel argues that the liquidated damages provision contained in Section 6.03 of the Employment Agreement precludes Liss from bringing a claim for treble damages under A.R.S. § 23-355. In response, Liss contends that he did not expressly agree to waive any right to seek statutory

treble damages against Exel.  Liss also contends that he cannot as a matter of law be found to have waived his right to seek treble damages under § 23-355 because he was not represented by counsel in the negotiation of the Employment Agreement.

The Court finds that Liss waived his right to seek treble damages under § 23-355 by agreeing to an enforceable liquidated damage provision as his "exclusive remedy" in the event of a breach by Exel.  Arizona courts will enforce a liquidated damage provision in a contract as long as it is not a penalty. *Mechanical Air Engr. Co. v. Totem Constr. Co.*, 166 Ariz. 191, 801 P.2d 426 (Ariz. App. 1989).  As explained by Arizona Court of Appeals in *Mechanical Air Engr. Co.*, this rule derives from the general principle of contract law "that when parties bind themselves by a lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous." 166 Ariz. at 193, 801 P.2d at 428 (*quoting Estes Co. v. Aztec Const., Inc.*, 139 Ariz. 166, 168, 677 P.2d 939, 941 (Ariz. App. 1983)).  A liquidated damage provision is not a penalty as long as it meets the following two conditions: (1) the liquidated amount must be a reasonable forecast of just compensation for the harm caused by a breach; and (2) the harm caused by a breach must be one that is very difficult to accurately estimate. *Id*.

Here, the Court finds that Section 6.03 is not a penalty under the *Mechanical Air* test. Section 6.03 of the Employment Agreement provides for Liss to receive "all of the compensation set forth in Section 3, including bonus pursuant to Section 3.02, for twelve months" in the event of a breach by Exel. Essentially, Liss would continue to receive his yearly salary, which includes a $125,000/year base salary, bonus, $500/month car allowance, fringe benefits and reimbursement of expenses, for a year upon termination of his employment by Exel.  This provision is a reasonable forecast of just compensation because the liquidated amount is simply the contract price, which includes Liss's direct wages and his other employment benefits, extended for a year after his termination.  The Court also finds that the harm caused by a breach is difficult to estimate because the job market is constantly in flux, making it difficult to predict how long it would take Liss to find another comparable job if Exel terminated the Employment Agreement.  For example, when the job market is particularly strong, the one year cushion provided by Section 6.03 might be extremely generous as Liss

1  could receive two salaries for a period if he were to find another job in less than a year.  On the
2  other hand, during a recession, one year might not be enough time for an executive of Liss's
3  experience to find comparable employment.  Therefore, Section 6.03 is not a penalty because
4  it represents a reasonable forecast of just compensation for a harm that is difficult to accurately
5  estimate.  Because Arizona will enforce a liquidated damage provision in a contract as long as
6  it is not a penalty, the Court finds that the parties agreed to accept the liquidated damages set
7  forth in Section 6.03 as the exclusive remedy in the event of a breach by Exel.  Accordingly,
8  Count II of Liss's Amended Complaint must be dismissed because it violates Section 6.03 of
9  the parties' Employment Agreement.

10  Liss contends that he did not expressly agree to waive any right to seek statutory treble
11  damages against Exel.  According to Liss, punitive damages are not synonymous with statutory
12  treble damages under § 23-355; thus, while Section 6.03 may have waived his right to recover
13  punitive damages, it did not waive his right to pursue statutory treble damages.  The Court
14  rejects this argument because the express language of the contract provides that Liss shall
15  receive  liquidated damages "as his exclusive remedy for any breach of the obligations of the
16  [Exel]."  "The construction of a contract is a question of law where the terms of the agreement
17  are plain and unambiguous." *Shattuck v. Precisions Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332
18  (1977). Section 6.03 is unambiguous as it clearly sets forth the compensation Liss is to receive
19  in the event of a breach by Exel.  The distinction Liss makes between statutory treble damages
20  and punitive damages is merely an attempt to create a factual dispute where there is none.  Liss
21  agreed to an "exclusive remedy" for any breach by Exel and this "exclusive remedy" is clearly
22  defined by the agreement.

23  Liss also contends that he cannot as a matter of law be found to have waived his right
24  to seek treble damages under § 23-355 because he was not represented by counsel in the
25  negotiation of the Employment Agreement.  *See Swanson v. The Image Bank*, 206 Ariz. 264,
26  77 P.3d 439 (Ariz. 2003).  According to Liss, despite his business experience, he was
27  disadvantaged in the negotiation because he was without counsel.  Moreover, Liss argues that
28  "whether [he] was sophisticated and was of equal bargaining strength is a matter of disputed

fact." (Dkt. 193 at 7).          In the December 12, 2005, Order denying Exel's Motion for Partial Judgment on the Pleadings, the Court agreed with Liss's interpretation of *Swanson*. The Court stated, "[t]he plain language in *Swanson* clearly requires three elements be present in order for parties to a contract to waive the statutory remedy under A.R.S. § 23-355." (Dkt. 68 at 5). Because Liss was not represented by counsel in the negotiation of the Employment Agreement, the Court found that he could not contract to waive the statutory remedy under A.R.S. § 23-355.

On reconsideration, the Court finds that *Swanson* does not require three elements to be present in order for parties to a contract to waive the statutory remedy provided under A.R.S. § 23-355. The trial court has the inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. *See Sch. Dist. No. 5 v. Lundgren*, 259 F.2d 101, 104 (9th Cir. 1958); *see generally also John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82 (1922). In *Swanson*, the Arizona Supreme Court considered whether an employment contract's choice-of-law provision, which provided for Texas substantive law to govern any controversy arising out of the contract, precluded recovery of a statutory claim for treble damages under A.R.S. § 23-355. *Swanson* involved a dispute over post-termination compensation after Defendants/Appellants, The Image Bank, Inc. ("TIB"), terminated Plaintiff/Appellee, Mary Swanson ("Swanson"), and refused to make the severance payments required under her employment contract. At conclusion of the "Discussion" section of the Opinion, the Court stated: "we hold that Arizona statutory law does not preclude parties from agreeing by contractual provision in a negotiated contract to surrender the right to a statutory remedy under § 23-355." *Swanson*. 206 Ariz. at 268, 77 P.3d at 443. The Court then added:

> Unlike many employment relationships, we note that the employment contract in this case is not a contract of adhesion. Neither Swanson nor TIB can be described as unsophisticated or inexperienced in business and commerce, and neither was in need of protection from the other's superior bargaining power. The contract is a detailed document, negotiated and drafted by competent counsel. We decline, therefore, to address the result that may gave followed had this been a contract of adhesion.

*Id.*

Finally, in the "Disposition" section of the opinion, the Court stated: "[w]e hold that parties experienced in business, represented by counsel, and having relatively equal bargaining

- 7 -

strength, may, by express provision in a negotiated contract, surrender the statutory remedy under A.R.S. § 23-355." *Id*. at 269, 77 P.3d at 444. Here, Defendant argues that the holding in the "Discussion" section (the "first holding") is the appropriate statement of the rule; Plaintiff argues that the holding in the "Disposition" section ("the second holding") is controlling.

The Court finds that the first holding, which does not require a party to be represented by counsel, is the most accurate statement of the rule in *Swanson*. In *Swanson,* the Court expressly limited their holding to exclude contracts of adhesion. By stating that "parties experienced in business, represented by counsel, and having relatively equal bargaining strength, may.... surrender the statutory remedy under A.R.S. § 23-355," the Arizona Supreme Court was simply emphasizing that *Swanson* was a situation "[u]nlike many employment relationships" since the contract at issue was not a contract of adhesion. *Swanson,* at 269, 77 P.3d at 444. *Swanson,* therefore, holds that an express contractual provision that surrenders the right to a statutory remedy under § 23-355 will be upheld if it is contained in a negotiated contract. Thus, this Court views *Swanson* as requiring courts to evaluate the contract negotiation to determine whether the employment contract was a contract of adhesion. If the circumstances indicate that the contract was the product of a meaningful negotiation, then the court should allow the parties to surrender the right to a remedy under § 23-355 regardless of whether a party was represented by counsel.

Applying this analysis to the present case, the Court finds that the parties were not precluded from agreeing to surrender the right to a remedy under § 23-355 despite the fact that Liss was not represented by counsel during the negotiation of the Employment Agreement. A contract of adhesion is "typically a standardized form 'offered to consumers of goods and services on essentially a take-it-or-leave-it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form of the contract.'" *Broemmer v. Abortion Servs.*, 173 Ariz. 148, 150-151 (1992) (quoting *Wheeler v. St. Joseph Hosp.*, 63 Cal. App. 3d 345, 356, 133 Cal. Rptr. 775, 783 (1976)). As demonstrated in *Swanson*, the employee's experience in business matters, the presence of counsel during the contract negotiations and the

existence of an inequality in bargaining power, factor heavily into the determination of whether a particular employment contract is a contract of adhesion. 206 Ariz. at 268-269, 77 P.3d at 444. However, the absence of counsel does not automatically render an employment contract a contract of adhesion or preclude meaningful negotiation. For example, the present case demonstrates that a party can engage in a meaningful negotiation without the assistance of counsel. Liss, an experienced executive with a Masters in Business Administration, spent 18 months negotiating his Employment Agreement and managed to secure a buyout provision that was more substantial than that of the company's CEO and Chairman at the time. Multiple drafts of the of agreement were exchanged between the parties and Liss admitted to understanding that he could have retained counsel to assist him in the negotiations. Liss even changed the choice of law provision from Missouri to Arizona. Based on these undisputed facts, there can be no doubt that this was a meaningful negotiation. Accordingly, the Court finds that the parties were not precluded from agreeing to surrender the right to a statutory remedy under § 23-355 even though Liss negotiated the contract without counsel.

**B. Liss's Claims for 2001 and 2002 Bonus Compensation**

Exel moves for summary judgment on Liss's claims for 2001 and 2002 bonus compensation, arguing that Liss cannot pursue these claims because he failed to plead them in his Amended Complaint. Liss responds by pointing to paragraphs 19, 22, 30 and 36 of the Amended Complaint, which he contends "refer generally to annual bonus compensation." (Dkt. 197 at 2). The Federal Rules of Civil Procedure only require that the complaint give fair notice of a claim, Liss argues, not the particular grounds upon which the claim rests.

Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for relief...shall contain...a short and plain statement of the claim showing that the pleader is entitled to relief." A claim is the "aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. Los Angeles County*, 216 F.3d 836, 840 (9th Cir. 2000). Rule 10(b) of the Federal Rules of Civil Procedure requires "[e]ach claim founded upon a separate transaction or occurrence" to be "stated in a separate count or defense whenever separation facilitates the clear presentation of the matters set forth."

1  Here, the Court finds that there is nothing in the Amended Complaint to put Exel on
2  notice that Liss seeks bonus compensation for the years ending December 31, 2001 and
3  December 31, 2002. These claims involve separate transactions and should have been listed
4  separately in the Amended Complaint pursuant to Fed. R. Civ. P. 10(b). In paragraphs 17 and
5  18 of the Amended Complaint, Liss expressly states that Exel had not paid his annual bonus for
6  the years 2003 and 2004. The fact that Liss makes these specific allegations regarding years
7  2003 and 2004 undermines his argument that the other paragraphs in the Amended Complaint,
8  which generally refer to annual bonus compensation, provide sufficient notice of the claims
9  arising out of the unpaid bonus compensation in 2001 and 2002. Given the fact the Liss only
10 specifically mentions unpaid bonus compensation for 2003 and 2004, the most reasonable
11 inference is that all subsequent general references to unpaid bonus compensation relate to these
12 years. If Liss wanted to pursue claims for unpaid bonus compensation for the years 2001 and
13 2002 as well as 2003 and 2004, then he should have expressly pled them in his Amended
14 Complaint.

15 Accordingly, because Liss's Amended Complaint does not make reference to unpaid
16 bonus compensation for the years 2001 and 2002, the Court will not allow him to pursue claims
17 for unpaid bonus compensation arising out of those years. Any claims Liss has regarding
18 unpaid bonus compensation shall be limited to the years 2003 and 2004.

## IV. CONCLUSION

Accordingly, in light of the reasons set forth above,

**IT IS HEREBY ORDERED** that Exel's Motion for Partial Summary Judgment on Count II of Robert Liss's Amended Complaint (Dkt. 180) is **GRANTED**.

**IT IS FURTHER ORDERED** that Exel's Motion for Partial Summary Judgment on Mr. Liss's Claims for 2001 and 2002 Bonus Compensation (Dkt. 188) is **GRANTED**.

**IT IS FURTHER ORDERED** that the attorneys for each party who will be responsible for trial of the lawsuit shall appear and participate in a **Final Pretrial Conference on Wednesday, June 6, 2007 at 4:00 p.m.** in courtroom 605 on the sixth floor of the United

1  States Courthouse, 401 W. Washington St., Phoenix, Arizona. Because the Final Pretrial
2  Conference is held for the benefit of all parties, and further because the presence of all parties
3  will facilitate frank discussion of the pertinent issues in the lawsuit, each party, or a
4  representative with binding settlement authority if the party is an entity, shall attend the Final
5  Pretrial Conference. At the Final Pretrial Conference, the Court shall set a firm trial date.
6      DATED this 3rd day of April, 2007.

Stephen M. McNamee
United States District Judge