1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Robert E. LISS and Zoe LISS,            )   No. CIV-04-2001-PHX-SMM
                                            )
10              Plaintiffs,                  )   **ORDER**
                                            )
11  v.                                       )
                                            )
12  EXEL TRANSPORTATION SERVICES,)
    INC. et al.,                             )
13                                           )
                Defendants.                  )
14  _____)
                                            )
15  EXEL TRANSPORTATION SERVICES,)
    INC.,                                    )
16              Counterclaimant,             )
                                            )
17  v.                                       )
                                            )
18  Robert E. LISS and Zoe LISS,            )
                                            )
19              Counterdefendants.           )
    _____)

20

21          Pending before the Court is Defendant/Counterclaimant Exel Transportation Services,

22  Inc.'s ("Exel") motion to hold Plaintiff/Counterdefendant Robert Liss ("Liss") in contempt for

23  failure to abide by the Court's April 29, 2005 order to produce "Crossdockers" documents and

24  for failure to fulfill his discovery obligations (Dkt. 230, Exel's Mot. for Sanctions). Exel seeks

25  an adverse jury instruction and attorneys' fees in addition to holding Liss in contempt. Exel has

26  also filed a motion to exclude from the record certain portions of the declarations of Stanley

27  Lerner and Robert Shely filed in support of Liss's response to the motion for sanctions (Dkt.

28

1   270, Exel's Mot. to Exclude).  Having considered the parties' contentions, the Court issues this

2   Order.

3                                    **BACKGROUND**[1]

4          This motion arises from Liss's responses to discovery requests and alleged refusal to

5   comply with a Court order dated April 28, and May 4, 2005.[2]  The Court ordered Liss to

6   produce the computer he used while employed by Commercial Property Management ("CPM

7   computer") communications regarding "Crossdockers," and related materials.  (Dkt. 49, Order

8   dated May 4, 2005 at 2.)  Exel contends that Liss has continuously refused to produce the

9   materials identified in that Order.  (Dkt. 230, Exel's Mot. for Sanctions 2.)  Exel requests that

10  the Court find Liss in contempt for failure to abide by the Order, issue an adverse inference jury

11  instruction, and award attorney's fees.  (Id. at 17-18.)  Liss responds that he has produced

12  everything in his possession and control, and that Exel failed to follow up with CPM to obtain

13  the sought documents.  (Dkt. 255, Liss's Resp. to Mot. 2-3.)  Liss also contends that the

14  documents are not relevant to any remaining claims, and that Exel has not proved that he

15  violated a court order by clear and convincing evidence.  (Id. at 3.)

16         Counsel for Liss requested an evidentiary hearing if the Court wished to inquire further

17  into the factual allegations.  (Id. at 4 n.2.)  An evidentiary hearing was to be held on Friday,

18  February 22, 2008 at 1:30 p.m.  The Court has since determined that this motion can be decided

19  without further inquiry into the factual allegations, and will therefore vacate the evidentiary

20  hearing.

21

22
_____

23         [1] For a thorough review of the factual and procedural background, see the memorandum
24  of decision and order in Liss's motion to dismiss (Dkt. 58), or the background provided in the
    order for partial summary judgment (Dkt. 212).

25
         [2] Although two dates appear in discussing the background of this matter and the order
26  issued, both dates pertain to the same dispute.  The Court issued its order orally at a discovery
    dispute hearing dated April 28, 2005.  (See Dkt. 236, Disc. Dispute Hr'g Tr., Apr. 28, 2005.)
27  The Court then issued a written order memorializing the oral order.  (Dkt. 49, Order dated May
28  4, 2005.)

                                          - 2 -

1      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as Liss is

2   a citizen of Arizona, Exel is a Delaware corporation with its principal place of business in

3   Tennessee, and the amount in controversy exceeds $75,000.

4                                **STANDARD OF REVIEW**

5      District courts have broad equitable power to order appropriate relief in civil contempt

6   proceedings. McComb v. Jacksonville Paper Co., 336 U.S. 187, 193 (1949); Neebars, Inc. v.

7   Long Bar Grinding, Inc., 438 F.2d 47, 48 (9th Cir. 1971) (per curiam).  A district court may

8   impose civil contempt sanctions to coerce obedience to one of its orders, or to compensate the

9   party pursuing the contempt action for injuries resulting from the contemptuous behavior, or

10  both.  Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).  Generally,

11  however, a court should only impose the minimum sanction necessary to obtain compliance.

12  Id.  Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial.  Id.

13  In determining the amount and duration of a coercive fine, a court must "consider the character

14  and magnitude of the harm threatened by continued contumacy, and the probable effectiveness

15  of any suggested sanction in bringing about the result desired."  Id. at 516 (quoting United

16  States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947)).

17      With a motion for civil contempt, the moving party has the initial burden of

18  demonstrating by "clear and convincing evidence" that a specific and definite order of the court

19  has been violated.  FTC v. Enforma Natural Products, Inc., 362 F.3d 1204, 1211 (9th Cir. 2004).

20  In determining whether the nonmoving party violated the order, the focus is not on subjective

21  beliefs or intent in complying with the order, but whether in fact the conduct complied with the

22  order at issue.  In re Dyer, 322 F.3d 1178, 1191 (9th Cir. 2003).

23      Once the moving party makes its initial showing, the burden shifts to the party violating

24  the order to demonstrate why they were unable to comply.  Enforma Natural Products, 362 F.3d

25  at 1211.  The U.S. Circuit Court of Appeals for the Ninth Circuit has long held that the rule in

26  civil contempt has "been whether defendants have performed 'all reasonable steps within their

27  power to insure compliance' with the court's orders."  Stone v. City and County of San

28  Francisco, 968 F.2d 850, 856 (9th Cir. 1992) (quoting Sekaquaptewa v. MacDonald, 544 F.2d

- 3 -

1    396, 404 (9th Cir. 1976)).  A party may not disobey a court order and later argue there were

2    "exceptional circumstances" for doing so.  Peterson v. Highland Music, Inc., 140 F.3d 1313,

3    1323 (9th Cir. 1998).  However, a party attempting to avoid civil contempt may raise a

4    "substantial compliance" defense: "If a violating party has taken 'all reasonable steps' to

5    comply with the court order, technical or inadvertent violations of the order will not support a

6    finding of civil contempt."  Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir.

7    1986).  But intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a

8    defense.  Stone, 968 F.2d at 857.

9          A trial court also has the broad discretionary power to permit a jury to draw an

10   adverse inference from the destruction or spoliation against the party or witness responsible

11   for that behavior.  Akiona v. United States, 938 F.2d 158 (9th Cir.1991).  A finding of "bad

12   faith" is not a prerequisite to this corrective procedure.  Unigard Sec. Ins. Co. v. Lakewood

13   Eng'g & Mfg. Corp., 982 F.2d 363, 368-70 & n.2 (9th Cir. 1992).  A finding of bad faith

14   will suffice, but so will simple notice of "potential relevance to the litigation."  Akiona, 938

15   F.2d at 161;  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).

16                                    **DISCUSSION**

17         Exel claims that it has been unfairly prejudiced by Liss's failure to produce relevant

18   documents.  Exel's motion centers on Liss's failure to produce correspondence relating to

19   Crossdockers, a project Liss worked on while employed by CPM.  This information is

20   relevant to Exel's counterclaim for breach of Liss's employment contract with Exel because

21   Liss allegedly used Exel's confidential information to create Crossdockers.  Liss's discovery

22   responses caused Exel to seek and obtain an order requiring Liss to provide correspondence

23   and recipient lists relating to Crossdockers.  (Dkt. 49, Order dated May 4, 2005.)  Liss was

24   further ordered to produce the CPM computer for copying or imaging.  (Id.)  Exel asserts

25   that Liss failed to comply with these provisions of the order, and seeks the following

26   remedies: finding of contempt, adverse jury instruction, and attorney's fees.

27   //

28   //

1

**A. Crossdockers Correspondence**

2      Early in this litigation Exel requested documents relating to Crossdockers. (Dkt. 230,

3 Exel's Mot. at 5.) Liss responded by stating that he had no documents responsive to those

4 requests. (Id.) Exel was later made aware, by a third party, of a communication ("Exel 288-

5 291") Liss sent regarding Crossdockers and that Liss had not produced. This disclosure

6 ultimately led to the Court ordering Liss to produce "a list of all recipients" of Exel 288-291.

7 (Dkt. 49, Order dated May 4, 2005.) Liss was further ordered to produce "any similar

8 communications, which [Exel] would consider a violation of [Liss's] covenant not to

9 compete, as well as their recipients." (Id.) The deadline for producing these lists and

10 communications was 5:00 pm on May 13, 2005.

11      On May 9, 2005, Liss produced a seven-page document entitled "CPM - Crossdockers

12 Main Vendor List" listing 472 vendors. (Dkt. 231, Ricketts Decl., Ex. 10.) The cover letter

13 identifies this document as "a confidential list of persons to whom Robert Liss directed those

14 matters identified as Exel 288-291." (Id.) Other Court-ordered materials were also

15 produced. However, no similar communications and no recipients of similar

16 communications were produced by the May 13, 2005 deadline. On February 22,

17 2006—seven months after the deadline—Liss produced additional documents. (Id. at Ex.

18 16.) Those documents included emails sent September 16, 2004, January 10, 2005,

19 February 3, 2005, and May 5, 2005. (Id.)

20      These emails fell within the scope of the Court's Order to produce similar

21 communications. The September 16, 2004 email is from Liss, and responds to a reply to a

22 fax inquiry. The subject line of the email is "crossdockers." The body the email describes

23 steps already taken to build Crossdockers, and further steps the recipient should take in order

24 to become part of the Crossdockers initiative. The January 10, 2005 email reflects Liss as

25 both the sender and the recipient, and contains "Crossdockers Update - Request for final

26 data verification" in the subject line. Other than omitting the salutation "Dear Joe," the body

27 of the January 10, 2005 email is identical to Exel 288-291. The February 3, 2005 email

28

1  contains a chain of correspondence between Liss and a company named Centerline Cartage.

2  The subject line is "Crossdockers infrastructure: next steps," and the exchange results in an

3  updated list of "the name and/or zip codes of every city that is in delivery radius . . . as well

4  as the distance from [Centerline Cartage's] facility to each city."  The May 5, 2005 email

5  has a subject line of "Crossdocker Update."  In that email, Liss requests the recipients to

6  proofread and provide comments on a "mass e-mail to all Crossdocker Vendors that I plan to

7  send out next week."

8      Other materials provided on February 22, 2006 and on October 13, 2006 similarly

9  should have been produced by the May 13, 2005 deadline.  The February 22, 2006

10  disclosure includes a CPM "Contact Worksheet" dated November 4, 2004.  That worksheet

11  contains the following handwritten comment:  "Emails were sent to every company that

12  voluntarily decided to fill out this form, and then judged by its contents, deemed as a viable

13  candidate . . . [illegible] vendor for Crossdockers."  (Ricketts Decl., Ex. 16.)  Those emails

14  were not provided, nor is an explanation provided to connect the handwritten comment and

15  any emails produced.  On October 13, 2006, Liss produced emails entitled "Crossdockers

16  Updates" and dated April 25, May 11, and June 29 of 2005.  Exel believes these emails are

17  part of Liss's "monthly memos" sent to Crossdockers vendors.  (See id. at Ex. 14.)

18  Although the April 25, 2005 email falls within the temporal scope of the May 4, 2005 Order,

19  the Court cannot determine whether it should have been produced because Exel did not

20  provide a copy of the email.

21      Liss "readily acknowledges that there were documents . . . which had not yet been

22  produced."  (Liss's Resp. at 6.)  Nonetheless, he asserts two reasons why he discharged his

23  discovery and disclosure obligations.  First, his confidentiality agreement with CPM caused

24  him to first permit CPM's counsel to review the documents.  (Id.)  Second, Exel was aware

25  that CPM's counsel possessed the documents, but did not contact CPM to obtain these

26  documents.  (Id. at 7.)  In Liss's view, "any 'fault' with regard to production of these

27  documents . . . rests with Exel."  (Id.)

28

1    These purported justifications for non-production are without merit.  The

2  communications described above are clearly within the scope of the May 4, 2005 Order, and

3  the handwritten comment on the Contact Worksheet indicates that additional emails were

4  not produced.  Concerns regarding his confidentiality agreement with CPM should have

5  been handled by seeking a protective order from the Court, or by submitting a privilege log.

6  See Fed. R. Civ. P. 26(c), 26(b)(5).  Liss did not avail himself of these options, electing

7  instead to produce the communications seven months after the Court-ordered deadline

8  passed.  The fact that these communications were ultimately produced does not excuse

9  Liss's failure to comply with a court order.  Additionally, the Order was directed at Liss, and

10  attempts to shift responsibility to the opposing party and a third party are also meritless.

11  Liss's assertion that he "made a good faith effort" to produce the communications is also

12  unavailing (Liss's Resp. at 7); good faith is not a defense.  Stone, 968 F.2d at 857.  The

13  remedy for this violation will be taken up below.

14    **B.  CPM Computer**

15    The Court also ordered Liss to produce the CPM computer.  (Dkt. 49, Order dated

16  May 4, 2005 at 2.)  Like the Crossdockers communications, Liss was to produce the CPM

17  computer by May 13, 2005.  (Id.)  As of the discovery dispute hearing, the CPM computer

18  was being imaged by a third party and a word search conducted.  (Dkt. 236, Hr'g Tr. at 8:10-

19  17.)  The oral order was directed to Liss personally, "because Mr. Liss [had] control of the

20  CPM computer."  (Id. at 13:8-13.)  However, the written order permitted Liss to "make

21  imaging available to [Exel]."  (Dkt. 49, Order dated May 4, 2005.)

22    On May 16, 2005, CPM produced materials reflecting "hits" that resulted from the

23  imaging and word search.  Exel asserts that Liss failed to comply with the Order by relying

24  upon CPM to produce that over which Liss has control.  (Dkt. 268, Exel's Reply at 6.)  As

25  Exel does not appear to have suffered any prejudice, and as the production by CPM arguably

26  complies with the written order, the Court will excuse the minor technical violation of a

27  three-day delay in production.  However, because Liss relied on CPM to image and produce

28

1  the CPM computer, he will be precluded from objecting to the authenticity or other

2  foundational grounds for the materials produced by the word search.

3  **C.  Relevance of the Sought Materials to Remaining Issues**

4  In addition to arguing that he satisfied his discovery obligations, Liss asserts that the

5  sought documents relate only to whether Liss competed with Exel.  (Liss's Resp. at 9.)  The

6  materials are no longer relevant to the issues remaining for trial because the Court deemed

7  the non-competition covenant, § 4.02 of the Employment Agreement, unreasonable as a

8  matter of law.  (Id.)  Exel replies that the documents are "relevant and discoverable as they

9  relate to Exel's remaining counterclaims and affirmative defenses; namely, to Exel's claims

10  that Mr. Liss improperly used Exel's confidential, proprietary, and trade secret information."

11  (Exel's Reply at 7.)

12  The sought materials are relevant to remaining issues.  In finding § 4.02

13  unenforceable, the Court expressly preserved §§ 4.01 and 4.03—the confidentiality and

14  restrictive covenant provisions, respectively.  "Although Section 4.02 is unenforceable, this

15  finding has no impact on the other covenants contained in Part 4 of the Employment

16  Agreement. Liss has not demonstrated that sections 4.01 and 4.03 are unreasonable by

17  themselves. Thus, . . . the Court will simply delete Section 4.02 and allow the other

18  covenants of Part 4 to stand."  (Dkt. 212, Order dated Mar. 21, 2007 at 13.)  The sought

19  documents therefore remain relevant and discoverable to Exel's counterclaims.  See Fed. R.

20  Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is

21  relevant to the claim or defense of any party.").

22  **D.  Appropriate Sanctions**

23  If a party fails to obey an order to provide or permit discovery, the court may issue

24  further just orders. Fed. R. Civ. P. 37(b)(2)(A).  A district court has great latitude in

25  imposing sanctions under Rule 37.  Lew v. Kona Hosp., 754 F.2d 1420, 1425 (9th Cir.

26  1985).  That latitude encompasses "the broad discretionary power to permit a jury to draw an

27  adverse inference when a party fails to produce relevant evidence within its control."  See

28

1    Akiona v. United States, 938 F.2d 158, 160-61 (9th Cir.1991).  Additionally, a court can

2    prohibit the disobedient party from opposing designated claims or defenses, or from

3    introducing designated matters in evidence.  Fed. R. Civ. P. 37(b)(2)(A)(ii).  Finally, a court

4    must order the disobedient party, its attorney, or both to pay the reasonable expenses caused

5    by the failure to comply with a court order, unless the failure was substantially justified or

6    other circumstances make an aware of expenses unjust.  Id. at 37(b)(2)(C).  These expenses

7    include attorney's fees.  Id.

8                          **1.  Adverse inference jury instruction**

9            The rule permitting a jury to draw an adverse inference is based on two rationales.

10    Akonia, 938 F.2d at 160-61.  The "evidentiary rationale" recognizes the common sense

11    proposition that a party who destroys a document relevant to litigation is more likely to have

12    been threatened by the document than someone who does not destroy it.  Id. at 161.  The

13    "deterrence rationale" involves prophylactic and punitive effects, and presumes that an

14    adverse presumption will deter parties from destroying relevant evidence before it can be

15    introduced at trial.  Id.  Neither rationale exists unless the party had some notice that the

16    document was potentially relevant.  Id.; see also Park Inns Int'l, Inc. v. Pacific Plaza Hotels,

17    Inc., 5 F. Supp. 762, 765 n.2 (D. Ariz. 1998).

18            The Court finds that Liss's failure to comply with the Court's Order warrants an

19    adverse jury instruction.  Liss's prolonged refusal to produce the Crossdockers

20    communications supports the "common sense proposition" that those communications were

21    unhelpful to his case.  Through his counsel, Liss clearly had notice that the communications

22    were potentially relevant because the Court ordered those communications be produced.[3]

23    Both the evidentiary and deterrence rationales being present, the Court will issue an adverse

24    inference instruction based on the template proposed by Exel.  (See Dkt. 230, Exel's Mot.,

25    App. II.)

26

27            [3] The Court leaves to another day to determine whether Liss is estopped from denying
28    knowledge of the Order.

1

## 2. Additional sanctions

2      The Court will include additional sanctions to remedy Liss's failure to abide by the

3 Court's Order.  Liss will be precluded from objecting to the authenticity of, or on other

4 foundational grounds for, the materials produced by the word search of the CPM computer.

5 This objection preclusion is warranted by Liss's reliance on CPM to produce the CPM

6 computer even though the order to produce was directed at Liss personally.  Furthermore,

7 the Court is required to award expenses, including attorney's fees, caused by the failure to

8 comply.  See Fed. R. Civ. P. 37(b)(2)(C).  The failure was not substantially justified, nor do

9 any other circumstances make an award of expenses unjustified.  See id.  Liss will be

10 personally responsible for these expenses because his current counsel appeared in this matter

11 only after the events occurred which gave rise to the sanctions motion.  See Toth v. Trans

12 World Airlines, Inc., 862 F.2d 1381, 1387 (9th cir. 1988)((noting that the party "voluntarily

13 chose this attorney as his representative in the action")(quoting Link v. Wabash Railroad

14 Co., 370 U.S. 626, 633-34 (1962)).  These sanctions being sufficient to remedy Liss's failure

15 to comply, Exel's motion to hold Liss in contempt of court will be denied.

16                                          **CONCLUSION**

17      Liss failed to comply with the Court's order when he failed to produce the

18 Crossdockers communications by the May 13, 2005 deadline.  These communications were

19 clearly within the scope of the Order, and Liss's justifications for non-production are

20 without merit.  The Court will therefore issue an adverse inference instruction, and Exel is

21 entitled to recover from Liss the expenses incurred as a result of the failure to comply.

22 Because Liss relied on CPM to produce imaging of the CPM computer, Liss will be

23 precluded from objecting on authenticity or foundational bases to the materials obtained

24 from the CPM computer.  Accordingly,

25 //

26 //

27 //

28

- 10 -

1    **IT IS HEREBY ORDERED** granting Defendant Exel's motion for sanctions (Dkt.

2  230).  The Court shall instruct the jury that they may draw an adverse inference from

3  Plaintiff Liss's failure to produce Crossdockers communications by the Court-ordered

4  deadline of May 13, 2005.

5    **IT IS FURTHER ORDERED** that Plaintiff Robert Liss shall be personally liable for

6  the expenses, including attorney's fees, incurred by Exel on account of Liss's failure to

7  abide by the Court's order.  This amount shall include the expenses incurred in bringing the

8  motion for sanctions (Dkt. 230).

9    **IT IS FURTHER ORDERED** that Plaintiff Liss shall be precluded from objecting

10  on authentication or other foundational bases to materials received from the CPM computer.

11    **IT IS FURTHER ORDERED** denying Exel's motion to hold Plaintiff Liss in

12  contempt of court.

13    **IT IS FURTHER ORDERED** denying as moot Defendant Exel's motion to exclude

14  from the record portions of the declarations of Stanley Lerner and Robert Shely (Dkt. 270).

15    **IT IS FURTHER ORDERED** vacating the evidentiary hearing set in this matter for

16  Friday, February 22, 2008 at 1:30 p.m.

17    **IT IS FURTHER ORDERED** setting a hearing to address the parties' motions in

18  limine, and remaining miscellaneous matters, for **Friday, February 22, 2008** at **1:30 p.m.**

19  A final pretrial conference date shall be set at the motions in limine hearing.

20    DATED this 11th day of February, 2008.

21

22

23    _____
      Stephen M. McNamee
      United States District Judge

24

25

26

27

28

- 11 -